## IN THE UNITED STATES  DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

THE UNITED STATES OF AMERICA
*ex rel*. Wayne Allison,

        Plaintiffs,

   v.

SOUTHWEST ORTHOPAEDIC
SPECIALISTS, PLLC, et al.

        Defendants.

CASE NO. CIV-16-569-F

**DEFENDANTS OKLAHOMA CENTER FOR ORTHOPAEDIC &
MULTISPECIALTY SURGERY, LLC, USP OKLAHOMA, INC., USPI
HOLDING COMPANY, INC., USP INTERNATIONAL, INC., UAP OF
OKLAHOMA, LLC'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

Joe M. Hampton, OBA No. 11851
Amy Pierce, OBA No. 17980
CORBYN HAMPTON BARGHOLS PIERCE,
PLLC
211 N. Robinson, Suite 1910
Oklahoma City, OK 73012
Telephone: (405) 239-7055
Email: jhampton@corbynhampton.com

Abid R. Qureshi (D.C Bar No. 459227;
admitted *pro hac vice*)
Anne W. Robinson (D.C. Bar No. 503232;
admitted *pro hac vice*)
Dean W. Baxtresser (D.C. Bar No. 1012089;
admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: abid.qureshi@lw.com

*(additional counsel listed on signature page)*

## TABLE OF CONTENTS

**Page**

FACTUAL AND LEGAL BACKGROUND ..................................................... 3

LEGAL STANDARD ............................................................................... 6

ARGUMENT ........................................................................................... 7

I.    The Federal FCA Claims Should Be Dismissed (Counts 2-5) ................................ 7

    A.    Relator Fails to Identify a Single False Claim ............................ 7

    B.    Relator Fails to Plead Necessary Allegations to Establish AKS Liability ............................................................. 12

        1.    Relator Has Not Alleged With Particularity That Federally Insured Patients Were Referred In Violation of the AKS .................................................... 14

        2.    Relator Has Failed to Allege the Intent Required by the AKS .......................................................... 16

    C.    Certain Alleged Schemes/Claims Should Be Dismissed For Other Reasons ......................................................... 17

        1.    Relator Fails to Plead Necessary Allegations to Establish Stark Law Liability for the Alleged "Employment Contract Scheme" .................................. 17

        2.    Relator Fails to Plead Facts Supporting Liability for USP, USPI, USPH, and Tenet Regarding Certain Alleged Schemes ............................................ 19

            a.    The Purported Employment Contract Scheme Includes No Allegations as to USP, USPI, USPH or Tenet ................................................ 20

            b.    The Purported Surgical Scrub Scheme Includes No Allegations as to USP, USPI, USPH or Tenet ................................................ 20

            c.    The Purported Sham Lease Scheme Includes No Allegations as to USP, USPI, USPH or Tenet ................................................ 20

d.     The Purported Office Space Scheme Includes No Allegations as to USP, USPI, USPH or Tenet .................................................................................. 20

e.     The Purported Credit Card Scheme Includes No Allegations as to USP, USPI, USPH or Tenet .................... 21

D.     Relator's "False Statement" Counts Fail for the Same Reasons ................................................................................. 21

II.     Relator Fails to Plead a Claim for Conspiracy (Count 7) ...................................... 22

III.     Relator's State Law Claims Should be Dismissed (Counts 9, 10, 11, 12) ................................................................. 24

IV.     Relator Fails to Plead a Claim Under the Reverse FCA (Count 6) ....................... 25

V.     Relator Cannot Bring a Claim for Violation of the Stark Law (Count 1) ..................................................................... 26

VI.     Claims Prior to May 27, 2010 are Barred by the FCA's Statute of Limitations ............................................................. 27

VII.     Dismissal Should Be With Prejudice ..................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ameritox, Ltd. v. Millennium Laboratories, Inc.*,
  803 F.3d 518 (11th Cir. 2015) ...................................................................... 26

*Anaeme v. FHP of New Mexico*,
  201 F.3d 447 (10th Cir. 1999) ....................................................................... 1

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................. 6, 10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 6

*Brereton v. Bountiful City Corp.*,
  434 F.3d 1213 (10th Cir. 2006) .................................................................... 28

*Carrel v. AIDS Healthcare Foundation*,
  898 F.3d 1267 (11th Cir. 2018) .................................................................... 11

*Corsello v. Lincare, Inc.*,
  428 F.3d 1008 (11th Cir. 2005) .................................................................... 24

*Ehrenhaus v. Reynolds*,
  965 F.2d 916 (10th Cir. 1992) ....................................................................... 1

*Guilfoile v. Shields Pharmacy, LLC*,
  No. 16-cv-10652, 2017 WL 969329 (D. Mass. Mar. 10, 2017) ................... 10

*Harrison v. Westinghouse Savannah River Co.*,
  176 F.3d 776 (4th Cir. 1999) ......................................................................... 2

*Morgan v. Organon USA, Inc.*,
  No. CIV-09-1076-F, 2009 WL 10671779 (W.D. Okla. Dec. 8, 2009) ...... 7, 8

*Panis v. Mission Hills Bank, N.A.*,
  60 F.3d 1486 (10th Cir. 1995) ..................................................................... 25

*Pencheng Si v. Laogai Research Foundation*,
  71 F. Supp. 3d 73 (D.D.C. 2014) ............................................................ 23, 26

*Robbins v. Oklahoma*,
    519 F.3d 1242 (10th Cir. 2008) ................................................................. 6

*Schrock v. Wyeth, Inc.*,
    727 F.3d 1273 (10th Cir. 2013) ................................................................. 6

*Southwest Orthopaedic Specialists, P.L.L.C. v. Allison*,
    CJ-2017-2531 (Okla. Sup. Ct.) ................................................................. 1

*St. John Health System, Inc. v. Cohen*,
    No. 10-CV-0066-CVE-TLW, 2010 WL 1727971 (N.D. Okla. Apr. 27, 2010) .......... 27

*Steed v. Warrior Capital, LLC*,
    No. CIV-06-348-F, 2007 WL 1110757 (W.D. Okla. Apr. 11, 2007).......................... 6

*Total Energy Fabrication Corp. v. Irizar Heavy Indus., Inc.*,
    No. CIV-14-474-L, 2014 WL 12767463 (W.D. Okla. June 26, 2014)....................... 19

*United States v. The Boeing Company*,
    825 F.3d 1138 (10th Cir. 2016) ................................................................. 8

*United States v. Corinthian Colleges.*,
    655 F.3d 984 (9th Cir. 2011) ................................................................. 19

*United States ex rel. Bahrani v. Conagra, Inc.*,
    465 F.3d 1189 (10th Cir. 2006) ................................................................. 22, 25

*United States ex rel. Barrett v. Columbia/HCA Healthcare Corp.*,
    251 F. Supp. 2d 28 (D.D.C. 2003) ................................................................. 15

*United States ex rel. Bennett v. Medtronic, Inc.*,
    747 F. Supp. 2d 745 (S.D. Tex. 2010) ................................................................. 13

*United States ex rel. Booker v. Pfizer, Inc.*,
    847 F.3d 52 (1st Cir. 2017) ................................................................. 8

*United States ex rel. Bruno v. Schaeffer*,
    No. 16-00001-BAJ-EWD, 2018 WL 3041191 (M.D. La. June 18, 2018) ................. 27

*United States ex rel. Chase v. HPC Healthcare*,
    723 F. App'x 783 (11th Cir. 2018) ................................................................. 23, 24

*United States ex rel. Clausen v. Laboratory Corporation of America*,
    290 F.3d 1301 (11th Cir. 2002) ................................................................. 2, 8

*United States ex rel. Colquitt v. Abbott Laboratories*,
  864 F. Supp. 2d 499 (N.D. Tex. 2012), *aff'd*, 858 F.3d 365 (5th Cir. 2017).............. 24

*United States ex rel. Conner v. Salina Regional Health Center, Inc.*,
  543 F.3d 1211 (10th Cir. 2008) ........................................................ 13, 17

*United States ex rel. Dennis v. Health Management Associates., Inc.*,
  No. 3:09-cv-00484, 2013 WL 146048 (M.D. Tenn. Jan. 14, 2013) ........................... 13

*United States ex rel. Drakeford v. Tuomey Healthcare System*,
  675 F.3d 394 (4th Cir. 2012) ........................................................ 18, 27

*United States ex rel. Foster v. Bristol-Myers Squibb Co.*,
  587 F. Sup. 2d 806 (E.D. Tex. 2008) ................................................. 11, 17

*United States ex rel. Greenfield v. Medco Health Solutions*,
  880 F.3d 89 (3d Cir. 2018)................................................................ 12

*United States ex rel. Grenadyor v. Ukrainian Village Pharmacy, Inc.*,
  772 F.3d 1102 (7th Cir. 2014) ........................................................... 11

*United States ex rel. Harman v. Trinity Industries*,
  872 F.3d 645 (5th Cir. 2017) ............................................................. 2

*United States ex rel. Holmes v. Northrop Grumman Corp.*,
  642 F. App'x 373 (5th Cir. 2016) ........................................................ 1

*United States ex rel. Jamison v. McKesson Corp.*,
  649 F.3d 322 (5th Cir. 2011) ............................................................ 2

*United States ex rel. Joshi v. St. Luke's Hospital, Inc.*,
  441 F.3d 552 (8th Cir. 2006) ........................................................... 23

*United States ex rel. Karvelas v. Melrose-Wakefield Hospital*,
  360 F.3d 220 (1st Cir. 2004) ............................................................ 2

*United States ex rel. King v. Solvay S.A.*,
  823 F. Supp. 2d 472 (S.D. Tex. 2011) ................................................... 15

*United States ex rel. Lacy v. New Horizons, Inc.*,
  No. CIV-07-0137-HE, 2008 WL 4415648 (W.D. Okla. Sept. 25, 2008),
  *aff'd*, 348 F. App'x 421 (10th Cir. 2009)......................................... 15, 24

*United States ex rel. Lemmon v. Envirocare of Utah*,
  614 F.3d 1163 (10th Cir. 2010) .......................................................... 9

*United States ex rel. Miller v. Bill Harbert International Construction, Inc.*,
   608 F.3d 871 (D.C. Cir. 2010) ................................................................. 22

*United States ex rel. New Mexico v. Deming Hospital Corp.*,
   992 F. Supp. 2d 1137 (D.N.M. 2013) ....................................................... 25

*United States ex rel. Petras v. Simprael, Inc.*,
   857 F.3d 497 (3d Cir. 2017) ...................................................................... 23

*United States ex rel. Petratos v. Genentech Inc.*,
   855 F.3d 481 (3d Cir. 2017) ........................................................................ 2

*United States ex rel. Poisson v. Red River Service Corp.*,
   621 F. Supp. 2d 1153 (W.D. Okla. 2008) ................................................. 23

*United States ex rel. Scollick v. Narula*,
   215 F. Supp. 3d 26 (D.D.C. 2016) ............................................................ 26

*United States ex rel. Scott v. Pac. Architects & Engineers (PAE), Inc.*,
   270 F. Supp. 3d 146 (D.D.C. 2017) .......................................................... 26

*United States ex rel. Sharp v. Eastern Oklahoma Orthopedic Center*,
   No. 05-CV-572-TCK-TLW, 2009 WL 499375 (N.D. Okla. Feb. 27, 2009) ............... 6

*United States ex rel. Sheldon v. Kettering Health Network*,
   816 F.3d 399 (6th Cir. 2016) ...................................................................... 8

*United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*,
   472 F.3d 702 (10th Cir. 2006) ...........................................................*passim*

*United States ex rel. Simpson v. Leprino Foods Dairy Products Co.*,
   No. 16-CV-00268-CMA-NYW, 2018 WL 1375792 (D. Colo.
   Mar. 19, 2018) .......................................................................................... 28

*United States ex rel. Takemoto v. Nationwide Mutual Insurance Co.*,
   674 F. App'x 92 (2d Cir. 2017) ................................................................ 19

*United States ex rel. Taylor v. Gabelli*,
   345 F. Supp. 2d 313 (S.D.N.Y. 2004) ...................................................... 26

*United States ex rel. Tracy v. Emigration Improvement District*,
   No. 2:14-CV-00701, 2018 WL 3111687 (D. Utah June 22, 2018) ............ 28

*United States ex rel. Wagner v. Care Plus Home Health Care*,
   No. 15-CV-260-GKF-JFJ, 2017 WL 6329850 (N.D. Okla. Dec. 11, 2017) ................ 9

*United States ex rel. Williams v. City of Elk City*,
No. CIV-07-139-W, 2008 WL 11343000 (W.D. Okla. Oct. 16, 2008)...................... 21

*United States v. Franklin-El*,
554 F.3d 903 (10th Cir. 2009) ................................................................... 13

*United States v. McClatchey*,
217 F.3d 823 (10th Cir. 2000) .......................................................... 13, 17

*United States v. Medco Health Systems, Inc.*,
No. 12-522(NLH)(AMD), 2013 WL 6858758 (D.N.J. Dec. 30, 2013)...................... 14

*United States v. Quest Diagnostics*,
734 F.3d 154 (2d Cir. 2013).......................................................................... 1

*United States v. Scan Health Plan*,
No. CV 09-5013-JFW, 2017 WL 4564722 (C.D. Cal. Oct. 5, 2017) .......................... 19

*Universal Health Services, Inc. v. United States ex rel. Escobar*,
136 S. Ct. 1989 (2016) ................................................................................. 7

*Wachovia Bank, N.A. v. Bank of Oklahoma, N.A.*,
No. CIV-06-0263-F, 2006 WL 2934267 (W.D. Okla. Oct. 13, 2006) .......................... 7

## STATUTES

28 U.S.C. § 1367(c)(3) ................................................................................. 25

31 U.S.C. § 3729 ......................................................................... 7, 21, 25

31 U.S.C. § 3730 ............................................................................... 4, 27

42 U.S.C. § 1320a-7b ......................................................................... 3, 13

42 U.S.C. § 1395nn .................................................................... 5, 17, 18

56 O.S. § 1005 .................................................................................. 24, 25

63 O.S. § 5053 *et seq.*........................................................................... 24

## RULES

Fed. R. Civ. P. 9(b) ........................................................................*passim*

Fed. R. Civ. P. 12(b)(6) .......................................................................... 1, 6, 7

Defendants Oklahoma Center for Orthopaedic & Multispecialty Surgery, LLC ("OCOM"), USP Oklahoma, Inc. ("USP"), USPI Holding Company, Inc. ("USPH"), USP International, Inc. ("USPI"),[1] UAP of Oklahoma, LLC ("UAP") (collectively, the "USP Defendants") respectfully move to dismiss this False Claims Act ("FCA") *qui tam* action pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.

Relator Wayne Allison is an attorney who filed this lawsuit when he was employed by Southwest Orthopaedic Specialists PLLC ("SOS"), an orthopedic surgery clinical practice comprised of a group of surgeons (the "SOS Doctors").  He seeks to recover millions from his former employer and several related entities and individuals. Notwithstanding the ethical issues raised by an attorney suing his client and the manner in which he has pursued the litigation thus far,[2] the Second Amended Complaint ("SAC") should be dismissed for failing to state a claim upon which relief can be granted.

Relator alleges various ostensibly improper financial relationships among SOS, the SOS Doctors, and other non-SOS entities and individuals including the USP

---

[1] USP International, Inc. is not the name of any legal entity.

[2] As conceded in his pleading, Relator acted as an attorney for many of the defendants he is now suing.  *See, e.g.*, Second Amended Complaint ("SAC") ¶¶ 206, 211.  Relator also destroyed documents directly relevant to this lawsuit—a fact that is a matter of public record.  *See* Transcript of Proceedings on May 12, 2017 at 31-35, 42-43, 48, *Southwest Orthopaedic Specialists, P.L.L.C. v. Allison*, CJ-2017-2531 (Okla. Sup. Ct.).  Both of these issues have a bearing on Relator's ability to bring this lawsuit separate and apart from this Motion.  An attorney's ethical obligations, including the duty of confidentiality, prohibit the filing of whistleblower suits against client.  *See, e.g.*, *U.S. ex rel. Holmes v. Northrop Grumman Corp.*, 642 F. App'x 373 (5th Cir. 2016); *United States v. Quest Diagnostics*, 734 F.3d 154 (2d Cir. 2013).  Nor can a plaintiff pursue a matter after purposefully destroying key evidence.  *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992); *Anaeme v. FHP of New Mexico*, 201 F.3d 447 (10th Cir. 1999).

Defendants, Tenet Healthcare Corporation ("Tenet"), Anesthesia Partners of Oklahoma, LLC ("APO"), Integris Ambulatory Care Corporation and Integris South Oklahoma City Hospital Corporation (together, "Integris"), and Steve Hendley and Michael Kimzey.  His lengthy pleading culminates in a kitchen-sink listing of fourteen counts against the various defendants, many of whom are not mentioned in the relevant factual allegations.  Tellingly, the government has declined to pursue any of these claims.[3]

Relator's pleading fails to state a claim under the federal and Oklahoma FCAs under applicable pleading standards.  First, and as explained in Section I, despite the prolix nature of the SAC, it lacks required details tying each description of noncompliance with a false claim as required to establish liability under the False Claims Act pursuant to governing Tenth Circuit precedent:  "Liability under the FCA requires a false claim—a 'defendant's presentation of a false or fraudulent claim to the government is a central element of every False Claims Act case.'"  *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 727 (10th Cir. 2006) (citing *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 232 (1st Cir. 2004); *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999)).  Relator fails to

---

[3] *See, e.g., U.S. ex rel. Harman v. Trinity Indus.*, 872 F.3d 645, 665 (5th Cir. 2017) (dismissing FCA action where federal government and eight out of nine states declined to intervene in the action); *U.S. ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 490 (3d Cir. 2017) (emphasizing that DOJ declined to intervene in the suit and concluding that because "we do not think it appropriate for a private citizen to enforce these regulations through the False Claims Act"); *U.S. ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 331 (5th Cir. 2011) (noting that the government chose to intervene against certain defendants and stating that the case against the others "presumably lacked merit").

identify a single false claim submitted to the government and his FCA claims should be dismissed on this ground alone.

Second, while he attempts to predicate FCA liability on an alleged violation of the federal anti-kickback statute, 42 U.S.C. § 1320a-7b (the "AKS"), he does not adequately plead the elements and supporting facts of this law.   Third, there are no factual allegations as to certain defendants for many of the purported "schemes," and those claims should be dismissed as to those defendants under Rule 9(b).   Finally, Relator fails to provide required details regarding any false statement as to these alleged "schemes."

The remaining counts likewise fail to state a claim: no specifics or underlying violation support the conspiracy claim (Section II); the state FCA claims warrant dismissal for the same reasons discussed in Sections I and II (Section III); the reverse FCA is inapplicable to the facts alleged (Section IV); there is no independent cause of action for violation of the Stark Law (Section V); and a significant portion of the claims are barred by the FCA's six-year statute of limitations (Section VI).[4]

In short, the allegations, even taken as true for this motion, do not constitute an FCA violation and the SAC should be dismissed with prejudice (Section VII).

## FACTUAL AND LEGAL BACKGROUND

On May 27, 2016, Relator filed this action under federal and state False Claims Acts (Doc. No. 1).  The *qui tam* provisions of the FCA permit private parties (relators) to file suit alleging fraud against the government and to receive a reward from recovered

---

[4] Relator's allegations are even more tangential as to Tenet, and should be dismissed as to Tenet for the reasons explained in this Brief as well as the additional and independent reasons in Tenet's Motion to Dismiss and Brief in Support (filed Oct. 12, 2018).

monies.   31 U.S.C. § 3730(d).   *Qui tam* cases are filed under seal, affording the government time to investigate and determine whether to intervene.   *Id.* § 3730(b).

Relator is a practicing attorney licensed by the State of Oklahoma and was employed by SOS when he filed this action.   SAC ¶¶ 20-21.[5]   Relator's pleading, which he has amended twice (Doc. Nos. 7, 38), sets forth two general categories of allegations: (1) "direct" violations of the FCA by SOS and the SOS Doctors (collectively the "SOS Defendants") by submitting "factually false" claims for payment for procedures that were not medically necessary or not actually performed (SAC ¶¶ 175-89); and (2) an attenuated theory that various "improper financial relationships" exist among the SOS Defendants, the hospital they founded (OCOM), and the entities that have an ownership interest in the hospital (*i.e.*, the other USP Defendants) (SAC ¶¶ 95-174).

After two years, on May 2, 2018, the United States government and the State of Oklahoma intervened only as to the first of these two categories, which pertained to the SOS Defendants only.   *See* Doc. No. 36.   On July 12, 2018, this Court dismissed that first category of claims with prejudice pursuant to a settlement agreement between the SOS Doctors, the United States and the State of Oklahoma.   *See* Doc. No. 57.   The government

---

[5] Recognizing the complex ethical issues his role as an attorney poses for his ability to pursue this lawsuit, Relator attempts to disavow his legal role as it pertains to these allegations.   SAC ¶ 22.   But his attempt fails because in very same pleading, he acknowledges advising SOS and the SOS Doctors on "compliance with healthcare laws" (¶¶ 206, 211) and the "many steps, requirements, time required, and difficulties involved in providing [certain medical services] in compliance with healthcare laws," including identifying proper "CMS Form[s]" that require "specific attestations" about compliance with federal law (¶ 211).   He further acknowledges providing legal representation for "certain individual Defendants," and possibly participating in "confidential conversations with outside counsel through his employment with SOS" (¶ 22).

explicitly declined to intervene in the second category of claims regarding the financial relationships among the SOS Defendants, OCOM, and entities with an ownership interest in the hospital. *Id.* It is those claims that are the subject of this motion to dismiss.

These claims involve a series of allegedly "improper financial relationships, or Schemes, to reward SOS Doctors for past referrals and incentivize future referrals of patient services under federal healthcare programs to OCOM." SAC ¶ 95. In addition to the SOS Defendants and OCOM, Relator names as defendants numerous entities with purported ownership interests in OCOM, including the USP Defendants and Tenet.

The SAC highlights "two core schemes—the Equity Scheme and the Employment Contract Scheme" (*id.*)—but includes a total of eleven purportedly unlawful financial relationships (two of which have been dismissed) spanning more than a decade (far beyond the applicable statute of limitations) and fourteen counts. Relator bases his FCA claims on alleged violations of the AKS; the physician self-referral law (known as the "Stark Law"), 42 U.S.C. § 1395nn(a)(1); and the state-level counterparts to these statutes in the State of Oklahoma. The attached table provides, for the Court's reference, a summary of these alleged "schemes," their time period, the defendants named, and the counts and claims associated with each. *See* Exhibit 1 (table summarizing claims).

Notably, the SAC does not identify, for any of the remaining nine alleged "schemes," a single false claim for payment—the *sine qua non* of FCA liability. Rather, Relator proceeds under a "tainted claims" theory, contending in a general, conclusory fashion that the "[s]chemes taint *all* reimbursements OCOM received from the Government resulting from referrals from SOS Doctors from at least 2007 under the

Stark Law, AKS, FCA, and/or OKFCA."  SAC ¶ 7 (emphasis added); *see also, e.g., id.* ¶¶ 7.e, 18, 90, 135.  In addition to these alleged "schemes," the SAC includes retaliation claims against the SOS Defendants (Counts 13-14) and an additional FCA claim against Tenet regarding its purported failure to report under its 2016 non-prosecution agreement (Count 8).

## **LEGAL STANDARD**

"To survive a motion to dismiss under 12(b)(6), a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'"  *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must generally accept the complaint's allegations as true, but allegations that state "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action" "are not entitled to the assumption of truth."  *Id.* at 678-79.  The burden is on the Plaintiff to show "reason to believe that [he] has a reasonable likelihood of mustering factual support for [his] claims."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Because these claims "involve fraudulent conduct, Rule 9(b)'s heightened pleading requirements apply."  *U.S. ex rel. Sharp v. E. Okla. Orthopedic Ctr.*, No. 05-CV-572-TCK-TLW, 2009 WL 499375, at *3 (N.D. Okla. Feb. 27, 2009).  Rule 9(b) provides that a party "alleging fraud" must "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b); *Steed v. Warrior Capital, LLC*, No. CIV-06-

348-F, 2007 WL 1110757, at *3 (W.D. Okla. Apr. 11, 2007) (Friot, J.) ("Rule 9(b) . . . obligates plaintiffs to specify what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and what effect the scheme had on the plaintiffs."). "At a minimum," this rule "requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud," as well as "the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Sikkenga*, 472 F.3d at 726-27; *see also Morgan v. Organon USA, Inc.*, No. CIV-09-1076-F, 2009 WL 10671779, at *1 (W.D. Okla. Dec. 8, 2009) (Friot, J.) (quoting *Sikkenga*). "Dismissal of a claim for failure to meet the particularity requirements of Rule 9(b) is treated as a dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6)." *Wachovia Bank, N.A. v. Bank of Okla., N.A.*, No. CIV-06-0263-F, 2006 WL 2934267, at *1 (W.D. Okla. Oct. 13, 2006) (Friot, J.).

## ARGUMENT

Notwithstanding the length of the SAC, Relator has not pled with Rule 9(b)'s required particularity a fraudulent scheme to submit false claims based on underlying violations of law. Each count of the SAC fails to meet the requirements of Federal Rules 12(b)(6) and 9(b) and should be dismissed as a matter of law.

## I. The Federal FCA Claims Should Be Dismissed (Counts 2-5)

### A. Relator Fails to Identify a Single False Claim

The FCA focuses on "those who present or directly induce the submission of false or fraudulent claims." *Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct.

1989, 1996 (2016) (citing 31 U.S.C. § 3729(a)). Rule 9(b), as interpreted by the Tenth Circuit, requires the Relator to link his allegations regarding the purported schemes "with particularity, [to] *actual false claims* submitted to the government" and to "provide details that identify *particular* false claims for payment that were submitted to the government." *Sikkenga*, 472 F.3d at 727 (emphases added); *Morgan*, 2009 WL 10671779, at *1 (same); *see also U.S. ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 411 (6th Cir. 2016) ("[T]here is '[a] clear and unequivocal requirement that a relator allege specific false claims' when pleading a violation of the FCA.") (citation omitted). Describing schemes without linking to specific allegations is insufficient:

> Rule 9(b)'s directive that "the circumstances constituting fraud and mistake shall be stated with particularity" does not permit a False Claims Act plaintiff merely to describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payment must have been submitted, were likely submitted or should have been submitted to the Government.

*Sikkenga*, 472 F.3d at 727 (quoting *Clausen*, 290 F.3d at 1311). This is not a mere "ministerial act"; rather, the submission of a false claim is "the *sine qua non* of a False Claims Act violation." *Clausen*, 290 F.3d at 1311; *U.S. ex rel. Booker v. Pfizer, Inc.*, 847 F.3d 52, 57-58 (1st Cir. 2017). This *specificity* is critical because pleading the mere submission of a false claim does not state an FCA violation. Relators must plead that each claim was knowingly and materially false as well. *See United States v. The Boeing Co.*, 825 F.3d 1138, 1148 (10th Cir. 2016).

Thus, while a relator need not identify every possible false claim, he must allege some combination of the "details concerning the dates of the claims, the content of the

forms or the bills submitted, their identification numbers, the amount of money charged to the government, the particular goods and services for which the government was billed, the individuals involved in the billing, and the length of time between the alleged fraudulent practices and the submission of claims based on those practices." *Sikkenga*, 472 F.3d at 727-28. Moreover, a relator must provide more than mere conclusory allegations regarding the false claims. *See U.S. ex rel. Wagner v. Care Plus Home Health Care*, No. 15-CV-260-GKF-JFJ, 2017 WL 6329850, at *8 (N.D. Okla. Dec. 11, 2017) ("The court is not bound to accept the Complaint's conclusory allegations that defendants have billed Medicare for unnecessary services.").[6] As detailed below, none of those necessary details appear in Relator's pleading.

The SAC falls woefully short of the Rule 9(b) pleading requirement for each of the remaining alleged schemes in the SAC. *See* Exhibit 1 (providing relevant paragraph numbers for each). Instead of setting forth any of the required details, Relator attempts to satisfy the pleading requirements with a repeated, generalized statement for each scheme

---

[6] Nor does the SAC set forth even a reasonable inference that false claims were submitted as part of a fraudulent scheme. The Tenth Circuit, in *U.S. ex rel. Lemmon v. Envirocare of Utah*, held that a complaint that (1) set forth "the dates, numbers, and amounts of [defendant's] requests for payment under its contracts with the government;" (2) alleged that relators "reviewed 'all' of [defendant's] requests for payment during the pertinent period" and found them noncompliant with "contractual or regulatory obligations;" and (3) averred "that each request for payment submitted during the pertinent time period was paid in full by the government," sufficiently supported "a reasonable inference that false claims were submitted as part of" the varied schemes. 614 F.3d 1163, 1169, 1172 (10th Cir. 2010). No such details are pled here, and so the SAC fails to set forth even a "reasonable inference" of false claims tied to each alleged scheme. *See Wagner*, 2017 WL 6329850, at *4 (applying *Lemmon* and dismissing a *qui tam* complaint for failing to allege basic facts such as the dates, amounts billed, or individuals involved).

in the "Counts" section of the SAC that defendants "knowingly presented, or caused to be presented false or fraudulent claims for payment or approval to the Government."[7]  This type of "[t]hreadbare recital of the elements" is insufficient. *Iqbal*, 556 U.S. at 678-79.

Relator attempts to proceed under an unconstrained "taint" theory, referencing the purported *total* number of claims for payment submitted by OCOM.  *See*, *e.g.*, SAC ¶ 27 (alleging broadly that "OCOM is a . . . provider for federal healthcare programs and routinely submits claims for payment to those programs" and that OCOM submitted "11,370 claims for payment for Medicare beneficiaries for the years from 2011-2015").  Moreover, at least as to the alleged schemes where there is any mention of submitting claims whatsoever, Relator simply references "all" claims that resulted from referrals. *See, e.g.*, SAC ¶¶ 97-123 (Equity Scheme: alleging "*all* Governmental reimbursements to OCOM from 2007 to the present that resulted from SOS referrals"); *id.* ¶¶ 124-33 (Employment Contract Scheme: alleging "all" claims that resulted from SOS referrals); *id.* ¶¶ 151-63 (Anesthesia and National Anesthesia Schemes: APO "submitted or caused to be submitted claims for payment to healthcare programs for designated healthcare services, and remuneration was paid to APO's owners from reimbursements from federal healthcare programs").

Courts regularly dismiss FCA claims predicated on AKS violations where, as here, the relator fails to link the alleged kickback scheme to an actual claim for payment.  *See, e.g.*, *Guilfoile v. Shields Pharmacy, LLC*, No. 16-cv-10652, 2017 WL 969329, at *7 (D.

---

[7] Relator repeats this phrase 45 times without providing any of the required detail necessary under Rule 9(b).  *See* SAC ¶¶ 260-68, 276-84, 341-49, 357-65, 376-84.

Mass. Mar. 10, 2017) ("An illegal payment that violates the anti-kickback statute constitutes a false claim violation only when it results in a false claim being submitted to the government."); *U.S. ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Sup. 2d 806, 825 (E.D. Tex. 2008) (ordering dismissal because "[relator] does not provide any factual details from which this Court can reasonably infer a link between the kickback scheme he describes and the submission of a claim for payment"); *cf. U.S. ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1107 (7th Cir. 2014) ("To comply with Rule 9(b) [relator] would have had to allege either that the pharmacy submitted a claim to Medicare . . . on behalf of a specific patient who had received a kickback, or at least name a Medicare patient who had received a kickback.").

In one recent example, the Eleventh Circuit affirmed the dismissal of a *qui tam* complaint that failed to identify "an actual false claim where the [defendant] both violated the [AKS] when it unlawfully recruited a patient and then billed the government for the services provided to that patient." *Carrel v. AIDS Healthcare Found.*, 898 F.3d 1267, 1277 (11th Cir. 2018). Notably, the court emphasized that it is not sufficient to provide details regarding the underlying scheme (which the court described as the "mosaic of circumstances"), even if those allegations suggest the increased likelihood of violations (such as patient incentives, frequent requests for reimbursement from federal healthcare programs, and policies focused on patient recruitment). *Id.* Nor could relators "rely on mathematical probability to conclude that [defendants] must have submitted false claim[s] at some point." *Id.* ("Speculation that false claims 'must have been submitted' is insufficient.").

11

Similarly, in *United States ex rel. Greenfield v. Medco Health Solutions*, the Third Circuit rejected the relator's argument that "the taint of a kickback renders every reimbursement claim false." 880 F.3d 89, 100 (3d Cir. 2018). A "kickback does not morph into a false claim unless a particular patient is exposed to an illegal recommendation or referral and a provider submits a claim for reimbursement pertaining to that patient." *Id.* Thus, the court affirmed the lower court's judgment in favor of the defendant because the relator had provided no evidence showing that at least one of the federally insured patients "was exposed to a referral or recommendation . . . in violation of the [AKS]."[8] *Id.*[9]

Relator fails to identify a single false claim submitted to the government and instead seeks to proceed under a "taint" theory, requiring this Court to *infer* what he was required to plead. Relator has failed to meet Rule 9(b)'s requirements, and Counts 2, 3, 4, and 5 must be dismissed as to all Defendants.

### B.   Relator Fails to Plead Necessary Allegations to Establish AKS Liability

The lack of a well-pleaded AKS violation is additionally fatal to Relator's claims.

---

[8] Although *Greenfield* was resolved on summary judgment, it recognized that this principle is equally "apt" at the motion to dismiss stage. *Greenfield,* 880 F.3d at 98 n.9.

[9] The Department of Justice is in accord. The government filed an amicus brief in *Greenfield*, taking the position that the relator must show a connection between the alleged kickbacks and the claims defendants submitted. *See* Br. of the United States as Amicus Curiae, *U.S. ex rel. Greenfield v. Medco Health Sols.*, No. 17-1152 at 8 (3d Cir. 2017) ("The district court properly rejected relator's argument that any AKS violation by [defendant] rendered all claims by [defendant] false, regardless of how the patients associated with those claims came to be customers of [defendant]. Instead, to establish a false claim, relator had to show *a connection* between the alleged kickbacks paid . . . and the claims [defendant] submitted for federal beneficiaries." (emphasis added)).

The elements of the AKS violation must be pleaded with particularity under Rule 9(b) because they are brought as an FCA claim. *U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 543 F.3d 1211, 1214 (10th Cir. 2008) (affirming dismissal of alleged FCA violation for failure to state a violation of the AKS); *see also U.S. ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 783-85 (S.D. Tex. 2010) (dismissing kickback allegations for failure to meet the requirements of Rule 9(b)).

The AKS prohibits "any remuneration knowingly and willfully offered, paid, solicited, or received in exchange for Medicare or Medicaid patient referrals." *Conner*, 543 F.3d at 1223; *see also* 42 U.S.C. § 1320a-7b(b)(1). A complaint must allege at least three elements to make a prima facie case for a violation of the AKS: (1) the soliciting offer, or receipt of remuneration, (2) in exchange for *federally insured* referrals, and (3) with knowing and willful intent. Regarding intent, the relator must allege that each defendant acted both "knowingly and willfully," *i.e.*, with intent to obtain referral of federally insured patients, *and* with intent to solicit or receive remuneration in exchange for referrals. *See United States v. Franklin-El*, 554 F.3d 903, 911 (10th Cir. 2009). In other words, "one purpose of the offer or payment" must be to "induce Medicare or Medicaid patient referrals." *United States  v. McClatchey*, 217 F.3d 823, 835 (10th Cir. 2000); *see also U.S. ex rel. Dennis v. Health Mgmt. Assocs., Inc.*, No. 3:09-cv-00484, 2013 WL 146048, at *13 (M.D. Tenn. Jan. 14, 2013) ("[T]he key consideration is whether a physician referred a patient for which federal reimbursement was sought.").

Relator fails to plead the referral of a *single* federally insured patient with particularity, much less with the requisite intent to obtain such a referral.

13

### 1.    Relator Has Not Alleged With Particularity That Federally Insured Patients Were Referred In Violation of the AKS

Relator has failed to allege with particularity that a single federally insured individual was referred as a result of the various purported schemes he has alleged.  He does no more than include perfunctory recitation of "referrals of federally-insured patients" in the concluding sections of his pleading describing the various "counts" and alleged schemes.  *See, e.g.*, SAC ¶¶ 278-82, 284-85, 322-24 *et seq.*  Though Relator repeats this phrase ad nauseam throughout this section, he never goes beyond this bald assertion.  He never describes in any detail which federally insured patient was improperly referred, when it happened, or the amount of any claim involved.  This mere rote recitation is insufficient under the law.

For example, in *United States v. Medco Health Systems, Inc.*, No. 12-522(NLH)(AMD), 2013 WL 6858758 (D.N.J. Dec. 30, 2013), the relator pled that "59 of 401" patients referred by the alleged scheme "had private insurance," yet of "the remaining 352 patients"[10] the relator included "no factual allegations" to support the inference they "were under a federal . . . program."  *Id.* at *7.  Although the fact they "were not privately insured . . . [left] open the question of what kind of financial assistance [they] received," that "open question [was] not sufficient to meet" Rule 9(b).  *Id.* at *8.  In this case, Relator's allegations are even more deficient than those in *Medco*, and therefore plainly fail to state a viable theory of AKS violations.

Relator attempts to get around this lack of specificity by drawing inferences in his

---

[10] 401 minus 352 equals 49, not 59.  This apparent error appears within the opinion.

pleadings, but this is of no help—proper allegations must be sufficiently detailed to demonstrate that federally insured patients were referred under the purported schemes. Relator contends that *some* SOS patients are federally insured, *see* SAC ¶ 26 ("SOS is a credentialed and contracted provider for federal healthcare programs and routinely submits claims for payment to those programs . . . ."), and that SOS was responsible for a substantial amount of OCOM's revenue, *see id.* ¶ 101 ("SOS Doctors account for approximately two-thirds of OCOM's referrals and total revenue." (emphasis omitted)).

Relator apparently hopes to infer from these broad statements that some number of federally insured patients must have been referred from SOS to OCOM, but Relator's telling failure to specifically identify any referral of federally insured patients dooms his AKS allegations under Rule 9(b). *See U.S. ex rel. Lacy v. New Horizons, Inc.*, No. CIV-07-0137-HE, 2008 WL 4415648 at *5 (W.D. Okla. Sept. 25, 2008) (upholding dismissal of AKS-based FCA claims for failure to set forth the particulars required by Rule 9(b)), *aff'd,* 348 F. App'x 421 (10th Cir. 2009); *U.S. ex rel. Barrett v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 28, 35 (D.D.C. 2003) (dismissing kickback FCA claims because the kickback "allegations [we]re not connected *specifically* to Medicare patients" and were "too vague to give defendants notice of the relationship between the alleged kickbacks and the submission of claims to Medicare" (emphasis added)); *U.S. ex rel. King v. Solvay S.A.*, 823 F. Supp. 2d 472, 499 (S.D. Tex. 2011) (dismissing kickback FCA claims where relator tried to plead the "link[]" between kickback scheme and federal reimbursement by alleging medical provider "was in an economically depressed area" with "a high proportion of Medicaid enrollees").

## 2.      Relator Has Failed to Allege the Intent Required by the AKS

Relator also fails to adequately plead—as he must—that at least one *purpose* of the alleged remuneration was to obtain referral of *federally* insured patients.  He attempts to remedy this shortcoming by effectively reading this element out of the statute and arguing for a kind of strict liability: that the alleged AKS violations "taint *all* reimbursements" to OCOM and others.  SAC ¶ 7 (emphasis added); *see also, e.g.*, *id.* ¶ 4 ("[T]he relationship between SOS and OCOM has been illegally tainted by unlawful financial relationships and illegal kickbacks.  As a result, healthcare reimbursement claims Defendants submitted to the federal government and the State of Oklahoma violate healthcare laws."); *id.* ¶ 7.e. ("[T]he relationship between the SOS Defendants and the OCOM Defendants is so tainted with improper financial relationships and kickbacks that *all* OCOM reimbursements from the Government from at least 2007." (emphasis added)); *id.* ¶ 135 ("[T]he relationship between the SOS Defendants and the OCOM Defendants is so tainted with improper financial relationships and kickbacks that all OCOM reimbursements from the Government for DHS from at least 2007 are reachable by the Stark Law, AKS, FCA, and/or OKFCA.").   This broad-brush pleading is insufficient.

To adequately plead AKS liability, Relator must separate out and specifically distinguish federally insured referrals (to the extent any exist) from private referrals in order to demonstrate the requisite purpose behind an allegedly improper federal referral. *See, e.g.*, *Conner*, 543 F.3d at 1224 (affirming dismissal of AKS theory which "applied equally to a patient paying out of pocket or with private insurance" as to "Medicare

patients"). This is a critical distinction, as a "hospital or individual may lawfully enter into a business relationship with a doctor and even hope for or expect referrals from that doctor, so long as" obtaining *federally insured* referrals is not one purpose of that relationship. *McClatchey*, 217 F.3d at 834.

Relator's failure to distinguish any improper *federal* referrals means he cannot demonstrate the requisite intent needed for AKS liability. *See, e.g.*, *Foster*, 587 F. Supp. 2d at 824 (dismissing relator's claim that a kickback scheme caused "physicians to prescribe Defendant's drugs over its competitors . . . to physicians' entire patient population comprised of, among others, Medicaid subscribers" where relator did not name "any patient who received [prescriptions]—much less show that the patient was connected to Medicaid" and the "Court [was] without information to suggest that kickbacks induced any recommendations connected to a [sic] federal healthcare patients").

### C. Certain Alleged Schemes/Claims Should Be Dismissed For Other Reasons

#### 1. Relator Fails to Plead Necessary Allegations to Establish Stark Law Liability for the Alleged "Employment Contract Scheme"

The Stark Law prohibits referrals of certain federally insured services between a physician and a host of entities if the physician has a "financial relationship" with the entity. 42 U.S.C. § 1395nn(a). The law was "enacted to address overutilization of services by physicians who stood to profit from referring patients to facilities or entities in which they had a financial interest." *U.S. ex rel. Drakeford v. Tuomey Healthcare Sys.*, 675 F.3d 394, 397 (4th Cir. 2012). Necessarily, though, the law is subject to a wide

17

range of exceptions.  *See* 42 U.S.C. § 1395nn(b)-(e).  In particular, as pled, Relator's purported "Employment Contract Scheme" does not violate the Stark Law because it falls within the bona fide employment relationship exception as a matter of law.

"Bona fide employment relationships" are not considered impermissible financial relationships under the Stark Law.  *Id.* § 1395nn(e)(2).  This type of relationship is one that is (1) for "identifiable services," where (2) "the amount of the remuneration under the employment is consistent with the fair market value of the services and is not determined in a manner that takes into account . . . the volume or value of any referrals by the referring physician," and (3) the "remuneration is provided pursuant to an agreement which would be commercially reasonable even if no referrals were made to the employer."  *Id.*

The SAC affirmatively alleges facts that place the alleged "Employment Contract Scheme" squarely within this safe harbor.  The crux of the alleged "scheme" is simply that OCOM hired various new physicians to work at OCOM facilities while building their practice.  SAC ¶¶ 124-33.  The SAC concedes that employment agreements existed between OCOM and various doctors.  *Id.* ¶ 125.  There is no allegation that the services were not "identifiable," that the remuneration under the contract was not "consistent with the fair market value of the services" or that the agreement was not "commercial[ly] reasonable."  42 U.S.C. § 1395nn(e)(2).  To the contrary, the individual was hired to be an "orthopedic surgeon," SAC ¶ 125, and the contract provided a reasonable "opportunity for a bonus" after a fixed period of service, *id.* ¶¶ 126-27.

## 2.    Relator Fails to Plead Facts Supporting Liability for USP, USPI, USPH, and Tenet Regarding Certain Alleged Schemes

In order to satisfy Rule 9(b), relators must—of course—make specific allegations regarding each defendant.  *See, e.g.*, *U.S. ex rel. Takemoto v. Nationwide Mut. Ins. Co.*, 674 F. App'x 92, 95 (2d Cir. 2017) ("As an initial matter, th[e] [FCA's] statutory language contemplates individualized pleading for each defendant of the source of the obligation."); *United States v. Corinthian Colls.*, 655 F.3d 984, 997-98 (9th Cir. 2011) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant."); *Total Energy Fabrication Corp. v. Irizar Heavy Indus., Inc.*, No. CIV-14-474-L, 2014 WL 12767463, at *2 (W.D. Okla. June 26, 2014) (Rule 9(b) requires "the detail necessary to provide each defendant with adequate notice of a sufficient claim or the facts upon which it is based").[11]

Yet the SAC routinely alleges specific defendants are liable for a purported scheme in the "Claims" section, SAC ¶¶ 238-412, without actually pleading that the defendant had any role in the alleged scheme.  The following alleged schemes and attendant claims should be dismissed as to the defendants specified below based on this failure to satisfy basic Rule 9(b) requirements.

---

[11] There is no exception to this rule where the defendants are related entities.  *See United States v. Scan Health Plan*, No. CV 09-5013-JFW (JEMx), 2017 WL 4564722, at *7 (C.D. Cal. Oct. 5, 2017) (Rule 9(b) requirements are the same "when the defendants are related corporate entities").

### a. The Purported Employment Contract Scheme Includes No Allegations as to USP, USPI, USPH or Tenet

For the "Employment Contract Scheme" Relator contends that nearly all defendants are liable, SAC ¶ 16, Tbl. I; *id.* ¶ 48 nn.24-29, yet he makes factual allegations regarding the alleged misconduct for only two SOS Doctors (Cruse and Langerman) and OCOM, *id.* ¶¶ 124-33. He references USP in one single paragraph, *id.* ¶ 132, but only in that it sought to *terminate* the financial relationships. There are no allegations whatsoever regarding USPI, USPH or Tenet.

### b. The Purported Surgical Scrub Scheme Includes No Allegations as to USP, USPI, USPH or Tenet

For the "Surgical Scrub Scheme" Relator contends that nearly all defendants are liable, SAC ¶ 16, Tbl. I; *id.* ¶ 48 nn.24-29, yet makes factual allegations regarding only Cruse and Langerman, *id.* ¶¶ 136-41. He alleges that OCOM "agreed" to create the described financial relationship, ¶ 141, but otherwise lumps in all defendants as "OCOM Defendants." There are no specific allegations regarding USP, USPI, USPH or Tenet.

### c. The Purported Sham Lease Scheme Includes No Allegations as to USP, USPI, USPH or Tenet

For the "Sham Lease Scheme" Relator contends that nearly all defendants are liable, SAC ¶ 16, Tbl. I; *id.* ¶ 48 nn.24-29, yet makes particular factual allegations regarding only Cruse, Langerman, and OCOM, *id.* ¶¶ 142-46. There are no allegations whatsoever regarding USP, USPI, USPH or Tenet.

### d. The Purported Office Space Scheme Includes No Allegations as to USP, USPI, USPH or Tenet

For the "Office Space Scheme" Relator contends that nearly all defendants are liable, SAC ¶ 16, Tbl. I; *id.* ¶ 48 nn.24-29, yet makes particular factual allegations

regarding only Cruse and OCOM, *id.* ¶¶ 147-49.   There are no allegations whatsoever regarding USP, USPI, USPH or Tenet.

### e.     The Purported Credit Card Scheme Includes No Allegations as to USP, USPI, USPH or Tenet

For the "Credit Card Scheme" Relator asserts that nearly all defendants are liable, SAC ¶ 16, Tbl. I; *id.* ¶ 48 nn.24-29, yet makes factual allegations regarding only Cruse, Hendley and OCOM, *id.* ¶ 150.   There are no allegations whatsoever regarding USP, USPI, USPH or Tenet.

*          *          *

In sum, Counts 2 and 3 should be dismissed against USP, USPI, USPH (and Tenet, as explained in its Brief) as to the alleged schemes described above, as there are no factual allegations whatsoever delineating their role in any alleged fraud.  S*ee, e.g., U.S. ex rel. Williams v. City of Elk City*, No. CIV-07-139-W, 2008 WL 11343000, at *8 (W.D. Okla. Oct. 16, 2008) (FCA complaint must "reasonably inform each defendant of the fraudulent activities . . . for which he, she or it is being held responsible").

### D.     Relator's "False Statement" Counts Fail for the Same Reasons

Relator alleges generally in Counts 4-5 that the Defendants' certifications in "Cost Reports, attestations, EHR certifications, and individual claims for payment" separately violated the FCA.    SAC   ¶¶ 301, 304. The SAC alleges generally that various certifications would have been false, but it is missing the critical link to any actual purported false record or statement, as is required for any alleged violation of 31 U.S.C. § 3729(a)(1)(B).   Instead, the SAC states that "thousands of claims for payment and required reporting" would have included the purportedly problematic certifications.

SAC ¶ 193.  Even regarding the EHR program allegations, all Relator states regarding the specific false record in question is that "OCOM successfully made attestation and certification" and received "incentive payments."  *Id.* ¶ 201.

These allegations fail because, like Relator's direct FCA allegations, they rest on supposition and do not include any particulars regarding the who, what, and where related to these purportedly false statements.  Relator does not identify or attach a single false record or statement, the precise date when or where anyone made these false statements, or to whom the Defendants submitted any false statements.  *See U.S. ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1205 (10th Cir. 2006).  Relators' vague and conclusory pleading is a textbook example of the uncertain pleading that Rule 9(b)'s particularity standard is designed to avoid; thus, Counts 4 and 5 of the SAC should be dismissed.

## II.   Relator Fails to Plead a Claim for Conspiracy (Count 7)

Count 7 of the SAC alleges generally that defendants conspired with each other under the alleged schemes.  SAC ¶ 329.  To plead an FCA conspiracy claim, Relator must allege "(1) that an agreement existed to have false or fraudulent claims allowed or paid by the United States; (2) that [defendant] willfully joined that agreement . . .; and (3) that one or more conspirators knowingly committed one or more overt acts in furtherance of the object of the conspiracy."  *U.S. ex rel. Miller v. Bill Harbert Intern. Const., Inc.*, 608 F.3d 871, 899 (D.C. Cir. 2010).  The SAC fails to meet these requirements.

*First*, as a threshold matter, because Relator has failed to properly allege any substantive violation of the FCA, the conspiracy claim necessarily fails.  *See U.S. ex rel.*

*Petras v. Simprael, Inc.*, 857 F.3d 497, 507 (3d Cir. 2017) ("Our explanation of why the District Court was correct in dismissing the FCA claim applies with equal force to the dismissal of [Relator's] conspiracy claim."); *Pencheng Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 98 (D.D.C. 2014) ("[T]here can be no conspiracy to commit fraud in violation of the FCA if an underlying false claim has not been adequately alleged.").

*Second*, Relator fails to allege specifics related to the purported conspiracy beyond conclusory statements, even though a conspiracy claim is subject to the same heightened Rule 9(b) pleading standard as any other FCA claim. *See Sikkenga*, 472 F.3d at 726-28; *U.S. ex rel. Poisson v. Red River Serv. Corp.*, 621 F. Supp. 2d 1153, 1157 (W.D. Okla. 2008). A relator must allege the workings of the scheme, participants, and other specific facts that show an agreement to violate the FCA. *See U.S. ex rel. Chase v. HPC Healthcare*, 723 F. App'x 783, 791 (11th Cir. 2018); *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006); *Poisson*, 621 F. Supp. 2d at 1157.

Relator does not come close to meeting this requirement. The SAC provides no specifics regarding when the alleged conspiracy arose, who agreed with whom, the object of the conspiracy, what was done to effect the conspiracy, or other required particulars. Instead, the SAC repeats generalized legal conclusions, such as that the Defendants "acted in furtherance of this conspiracy" (SAC ¶¶ 320-28), that "overtly acted and conspired" (*id.* ¶ 114, *see also id.* ¶ 115), and "conspired to violate the FCA" (*id.* ¶ 319). Count 7 does not even identify the supposed conspirators among the myriad defendants, instead using the umbrella terms "Defendants," "OCOM Defendants" and "SOS Defendants" to sweep in *all* the defendants throughout this Count. *See id.* ¶¶ 317-33.

Such generalized allegations are routinely dismissed by courts. *See, e.g.*, *HPC Healthcare*, 723 F. App'x at 791 (affirming dismissal for failing to identify specific facts showing agreement to violate FCA); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (dismissing conspiracy claim where the "bare legal conclusion" that defendants "conspired to defraud" was not supported by specific factual allegations).

For all these reasons, the Court should dismiss the conspiracy count.[12]

## III.   Relator's State Law Claims Should be Dismissed (Counts 9, 10, 11, 12)

Counts 9-12 of the SAC allege violations of Oklahoma's version of the FCA ("OKFCA").  SAC ¶¶ 339-400, 407-12 (citing 63 O.S. § 5053 *et seq.*).  These causes of action arise from the same allegations as the federal claims in Counts 2-4.  Because the OKFCA parallels the federal FCA, Counts 9-12 should be dismissed for the same reasons.  *See, e.g.*, *U.S. ex rel. Colquitt v. Abbott Labs.*, 864 F. Supp. 2d 499, 537-38 (N.D. Tex. 2012), *aff'd*, 858 F.3d 365 (5th Cir. 2017) (dismissing both FCA and state law claims with prejudice where FCA requirements not met and no difference in state law).

In addition, Count 11 is predicated on an alleged violation of the Oklahoma Medicaid Program Integrity Act ("MPIA").  *See* SAC ¶¶ 374-75 (citing 56 O.S. § 1005).  The SAC entirely fails to allege a violation of the MPIA as to the OCOM defendants.  Unlike the AKS, Section 1005(A)(6) of the MPIA does not apply to those who "offer or pay" kickbacks—it only applies to those that "solicit or accept" kickbacks.

---

[12] Even if Relator could sufficiently plead facts relating to a conspiracy (he cannot), his claim is not cognizable for any conspiracy between corporate defendants and their respective employees or subsidiaries.  As a matter of law, FCA conspiracy claims based upon the actions of a corporation and its agents are barred by the intra-corporate conspiracy doctrine.  *See Lacy*, 2008 WL 4415648, at *6.

56 O.S. § 1005(A)(6).   Moreover, the SAC fails to allege any claims submitted specifically to the "Oklahoma Medicaid Program," a requirement of the MPIA.  *See id.*

Finally, Relator asserts that this Court has "supplemental jurisdiction" over the state law claims.  SAC ¶ 51.  However, this Court can decline to exercise that jurisdiction if it dismisses all claims over which it has original jurisdiction.   Thus, if this Court dismisses the federal claims, it should dismiss the state law claims.  *See* 28 U.S.C. § 1367(c)(3); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1492 (10th Cir. 1995); *U.S. ex rel. New Mexico v. Deming Hosp. Corp.,* 992 F. Supp. 2d 1137, 1166 (D.N.M. 2013) (dismissing state law claims where federal FCA claims had been dismissed).

## IV.   <u>Relator Fails to Plead a Claim Under the Reverse FCA (Count 6)</u>

Relator misunderstands the purpose of the reverse false claim provision of the FCA.  The fundamental requirement of this type of violation is an "obligation to pay or transmit money or property to the government."   31 U.S.C. § 3729(a)(1)(G).   As the Tenth Circuit has explained, the intent of this provision was "to provide that an individual who makes a material misrepresentation to *avoid* paying money owed the Government would be equally liable under the Act as if he had submitted a false claim to *receive* money."  *See Bahrani*, 465 F.3d at 1194  (emphases added).

But there is no assertion here that Defendants had an obligation to pay funds to the Government and avoided doing so.   Relator's theory of reverse FCA liability merely echoes his allegations that the Defendants committed direct FCA violations—then adds the assertion that Defendants "received reimbursement from the government for which they were not entitled" and failed to "return [these] wrongly received reimbursement[s]."

25

SAC ¶¶ 311-12.   In other words, the only monies Defendants allegedly avoided paying are those they purportedly received as a result of violating the FCA.   But an "obligation" under the reverse FCA does not arise simply by concealing fraudulent activity.   *U.S. ex rel. Scollick v. Narula*, 215 F. Supp. 3d 26, 44 (D.D.C. 2016) (rejecting reverse false claim based on "assertion that the defendants retained government funds that they knew were obtained as a result of fraud" because "plaintiff-relator may not argue that an obligation to pay the government arose solely [out] of the concealment of fraudulent activity").   Relator's theory would mean that every FCA case would state a reverse false claim, a position that has been readily rejected by every court that has addressed it.   *See, e.g.*, *U.S. ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 338 (S.D.N.Y. 2004) ("Close examination of these claims leads to the inescapable conclusion that they are redundant— two ways of describing the same transaction.   Because [relator's] allegations state a [direct false claim], they cannot also form the basis for a [reverse false claim].");   *Pencheng*, 71 F. Supp. 3d at 97 (same);   *U.S. ex rel. Scott v. Pac. Architects & Eng'rs. (PAE), Inc.*, 270 F. Supp. 3d 146, 155 (D.D.C. 2017) (same).

## V.   <u>Relator Cannot Bring a Claim for Violation of the Stark Law (Count 1)</u>

The first count of the SAC is a cause of action under the Stark Law.   *See* SAC ¶¶ 238-57.   However, on-point case law holds that there is no private right of action under the Stark Law.[13]   *See, e.g., Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 522 (11th Cir. 2015) ("neither Stark nor AKS provide private rights of action . . .");

---

[13]   Relator rightfully concedes in the SAC that the AKS lacks a private right of action, *see* SAC ¶ 68, yet bizarrely makes no such concession under the Stark Law.

*Drakeford*, 675 F.3d at 396 ("Stark Law does not create its own right of action . . ."); *U.S. ex rel. Bruno v. Schaeffer*, No. 16-00001-BAJ-EWD, 2018 WL 3041191, at *8 (M.D. La. June 18, 2018) ("[T]he Stark Law does not create a private right of action.   Relators' Stark Law claim is therefore dismissed.") (internal citations omitted); *St. John Health Sys., Inc. v. Cohen*, No. 10-CV-0066-CVE-TLW, 2010 WL 1727971, at *4 (N.D. Okla. Apr. 27, 2010) (citing case law).   This Court should dismiss Count 1 in the SAC.

## VI.   <u>Claims Prior to May 27, 2010 are Barred by the FCA's Statute of Limitations</u>

Relator attempts to pursue false statements and false claims for payment dating back to 2004 for the Surgical Scrub Scheme, 2007 for the Employment Contract and Office Space Schemes, and 2011 for the Credit Card Scheme.   *See, e.g.*, SAC ¶¶ 16, 124, 138, 150, 242, 244-45.   However, all of Relator's claims pre-dating six years prior to the filing of the relevant complaint are barred by the FCA's statute of limitations.   The FCA's limitations period is six years. 31 U.S.C. § 3731(b)(1); *see also Sikkenga*, 472 F.3d at 725 (holding that the FCA's six-year limit applies to actions pursued by private *qui tam* relators).[14]   Relator filed his Complaint on May 27, 2016.   The Employment Contract and Anesthesia claims were introduced in the First Amended Complaint, filed on December 8, 2016.   Accordingly, any claims for payment submitted before 2010 are time-barred.   Specifically, any claims for payment related to the Surgery Scrub, Office Space, and Credit Card Schemes submitted prior to May 27, 2010, and claims related to the Employment Contract Scheme submitted prior to December 8, 2010, are barred.

---

[14] The FCA's three-year tolling period is not applicable to *qui tam* suits brought by relators in which the government does not intervene.   *See Sikkenga*, 472 F.3d at 725.

## VII.    Dismissal Should Be With Prejudice

Relator should not be given a fourth chance to plead his case.  "A dismissal with prejudice is appropriate where a complaint fails to state a claim . . . and granting leave to amend would be futile."  *U.S. ex rel. Tracy v. Emigration Improvement Dist.*, No. 2:14-CV-00701, 2018 WL 3111687, at *4 (D. Utah June 22, 2018) (quoting *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006)).  Relator filed this case more than two years ago and has already amended his complaint twice to no avail.  If Relator could state his claims with the necessary particularity under Rule 9(b), he would have done so already.  Relator cannot tie any of the purported schemes to a claim for payment and will not be able to do so if permitted to amend.  Indeed, Relator would be hard-pressed to add *any* additional detail to his pleading given that he improperly destroyed relevant documents.  Moreover, this entire action and is subject to dismissal due to both this spoliation and relator's ethical obligations as an attorney for the very defendants he is suing.  *See supra* at 1 & n.2 (citing case law); *id.* at 4 & n.5.

Accordingly, further amendment would be futile, and the case should be dismissed with prejudice.  *See U.S. ex rel. Simpson v. Leprino Foods Dairy Prods. Co.*, No. 16-CV-00268-CMA-NYW, 2018 WL 1375792, at *5 (D. Colo. Mar. 19, 2018) (dismissing with prejudice where relator failed to plead each required element of an FCA case).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Relator's Second Amended Complaint.

s/  *Abid R. Qureshi*
Abid R. Qureshi (D.C. Bar No. 459227;
admitted *pro hac vice*)
Anne W. Robinson (D.C. Bar No. 503232;
admitted *pro hac vice*)
Dean W. Baxtresser (D.C. Bar No. 1012089;
admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Email: abid.qureshi@lw.com
Email: anne.robinson@lw.com
Email: dean.baxtresser@lw.com

Terra L. Reynolds (Ill Bar No. 6278858;
admitted *pro hac vice*)
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7640
Email: terra.reynolds@lw.com

Amy E. Hargreaves (CA Bar No. 266255;
admitted *pro hac vice*)
LATHAM & WATKINS LLP
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
Email: amy.hargreaves@lw.com

Joe M. Hampton, OBA No. 11851
Amy J. Pierce, OBA No. 17980
CORBYN HAMPTON BARGHOLS PIERCE, PLLC
211 N. Robinson, Suite 1910
Oklahoma City, OK 73012
Telephone: (405) 239-7055
Email: jhampton@corbynhampton.com
Email: apierce@corbynhampton.com

*Attorneys for USP Defendants*

29

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 12, 2018, the undersigned electronically filed the foregoing with the Clerk of the Court, to be served by operation of the Court's electronic filing system upon all counsel of record.


Dated October 12, 2018                              _____ /s/  *Abid R. Qureshi* _____